UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JOHN RICHARD MARTINEZ,<br><br>   Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration,<br><br>   Defendant. | Case No. EDCV 13-02295 AJW<br><br>MEMORANDUM OF DECISION |

  Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

  Plaintiff filed an application for SSI benefits on April 28, 2011, alleging that he had been disabled since January 23, 2009, due to "[l]earning, memory loss and carpal tunnel syndrome." [Administrative Record ("AR") 69]. Plaintiff's application was denied initially and upon reconsideration. [JS 2; AR 10]. Plaintiff requested an administrative hearing, which was conducted before an administrative law judge (the "ALJ") on December 20, 2012. [AR 10, 26-53]. Plaintiff, who was represented by an attorney, testified on his own behalf. [AR 10]. Testimony was also received from vocational expert Joseph H. Torres. [AR 10].

On January 10, 2013, the ALJ issued a written decision denying plaintiff's application for benefits. [AR 21]. The ALJ found that plaintiff had the following severe impairments: "bilateral carpal tunnel syndrome (CTS); bilateral ulnar nerve entrapment at the elbows; obesity; history of torn medial meniscus, Grade 2 chondromalacia of the left knee, status-post arthroscopic repair; hypertension; plantar spur, left foot; cognitive disorder; and low average intellectual ability." [AR 12]. However, the ALJ determined that plaintiff's "impairments, considered singly and in combination, do not meet or medically equal the criteria of any medical listing." [AR 13]. The ALJ further determined that plaintiff had the residual functional capacity ("RFC") to perform the following light work as defined in 20 C.F.R. § 416.967(b), with the following additional restrictions:

> Stand or walk for [sic] up to four hours out of an eight-hour workday, at a maximum of one hour at a time; postural activities can be performed on an occasional basis; no ladders, ropes, or scaffolds; must avoid hazardous machinery and unprotected heights; fine and gross manipulation can be performed on a frequent basis; no forceful grasping or torqueing, bilaterally; simple and routine tasks; non-public environment; no fast-paced work, such as a conveyor belt, no work requiring writing; and only very basic math and reading.

[AR 15].

The ALJ further found that plaintiff "is unable to perform any past relevant work." [AR 19]. However, relying on the testimony of the vocational expert, the ALJ determined that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [AR 21]. Accordingly, the ALJ concluded that plaintiff was not disabled at any time since the date he filed his application. [AR 21]. Subsequently, the Appeals Council denied plaintiff's request for review. [AR 1-3].

**Background**

Plaintiff was born in 1964, and he was forty-six years old when the ALJ issued his decision. [AR 20]. Plaintiff completed high school education and has past relevant work as a cook and a security guard. [AR 64, 147]. During the hearing, plaintiff testified as follows. He "was born retarded" and had problems getting and holding jobs because his "reading and writing is no good." [AR 31]. His mental issues cause him to get very angry. [AR 40]. He has heel spurs that caused pain from his heels to his thighs, making it hard for him to stand. [AR 34]. He has been using a cane for two years because of the pain. [AR 39]. He also has pain in his lower back and neck due to his carpal tunnel syndrome. [AR 34-35]. His right hand swells and

locks up when he is driving or holding a rake. [AR 36]. He gets "a lot of tingling pain going up [his] arms." [AR 36]. He has been wearing wrist braces since they were prescribed to him in 2002. [AR 39]. He has sharp pain in his left knee, in addition to swelling and stiffness. [AR 41]. He can only stand for a half-hour at any one time and can only walk for about an hour. [AR 41]. The pain in his hands and heels has increased in intensity over the years. [AR 42].

During the hearing, the vocational expert, Mr. Torres, also testified. [AR 49]. He opined that plaintiff's limitations precluded him from performing any of his past work, and that none of plaintiff's skills are transferrable. [AR 49]. He also testified that plaintiff could perform light or sedentary work as a packer, sorter, or assembler. [AR 49-52].

The documentary evidence of record indicates that plaintiff has been treated for knee, wrist, foot, and heel pain. [AR 230, 248, 283]. Plaintiff has also been treated for mental impairments. [AR 285].

Plaintiff began treatment for his alleged knee pain in 2010. [AR 230]. In August 2010, an MRI of plaintiff's left knee revealed a torn medial meniscus. [AR 230]. He had surgery on his left knee in January 2011. [AR 227]. In February 2011, Dr. Puri examined plaintiff and found that his left knee was doing "very well." [AR 229]. Dr. Puri also found that "both the skin portals [were] nicely healed and [plaintiff] ha[d] full range of motion and no effusion." [AR 229]. However, plaintiff was subsequently examined for knee pain in April 2011. [AR 235].

It is unclear when plaintiff began treatment for his alleged wrist pain. Plaintiff underwent bilateral carpal tunnel release surgery in 2003. [AR 313]. The surgery was unsuccessful. [AR 313]. In February 2011, Dr. Thakran performed a nerve conduction study that revealed "[b]ilateral median nerve dysfunction at the wrist (carpal tunnel syndrome)" and "[u]nderlying distal polyneuropathy." [AR 293-296].

Plaintiff began treatment for his alleged foot and heel pain in 2010. [AR 249]. He complained that he was unable to walk because he was experiencing great pain in both heels. [AR 249]. X-rays of his bilateral ankles and feet revealed a 9 millimeter plantar spur on the left, a 7 millimeter plantar spur on the right. [AR 264, 267, 270, 271, 274-275]. Additionally, plaintiff was examined approximately once a month from July 2010 to December 2010, and twice in 2011, for various complaints related to his feet and heels. [AR 236-249].

Plaintiff began treatment for his alleged neck, shoulder and back pain in 2010. [AR 248]. Plaintiff was last examined for chronic back pain in May 2011. [AR 233].

In January 2011, plaintiff was referred to Dr. Thakran for memory loss. [AR 283]. A neurological examination revealed plaintiff's "Folstein Mini Mental Status Exam score is 27/30[;] he is alert and oriented in all higher functions including attention and concentration, speech and language[;] and his [m]emory, judgment and insight appear appropriate." [AR 284]. Dr. Thakran also found that "[h]e most likely has pseudo-dementia of depression." [AR 285].

In June 2011, Dr. Donohue performed a consultative psychological evaluation on plaintiff at the Commissioner's request. [AR 306]. Dr. Donohue found that, "[g]iven test results and clinical data, [plaintiff] appears to be functioning in the low average range of ability on non-verbal skills and impaired in verbal skills." [AR 311]. Dr. Donohue also concluded that plaintiff's "ability to remember work locations and work-like procedures is intact [as well as] his ability to make simple work-related decisions." [AR 311]. Dr. Donohue found that plaintiff "has impaired judgment," but he nonetheless concluded that "[plaintiff] should be able to do his usual and customary job." [AR 311].

In August 2011, Dr. Handleman performed a consultative neurological evaluation on plaintiff at the Commissioner's request. [AR 313-317]. Dr. Handleman found that plaintiff has encephalopathy, developmental delay, neurofibromatis with café-au-lait spots, carpal tunnel syndrome, ulnar nerve entrapment at the elbow, and persistent discomfort from his left knee surgery. [AR 316]. Dr. Handleman concluded that plaintiff has the following physical limitations: plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently; he can push and pull on occasional basis; he can walk and stand for no more than six hours out of an eight hour work day; he can bend, kneel, stoop, crawl, and crouch occasionally; and he can use his hands for fine and gross manipulative movements occasionally.[1] [AR 317].

In September 2011, Dr. Taylor-Holmes, a non-examining state agency physician, reviewed the evidence in plaintiff's file and opined that plaintiff had the following exertional limitations: he can occasionally lift or carry 20 pounds; he can frequently lift or carry 10 pounds; he can stand or walk for about 6 hours in an 8 hour workday; he can sit for a total of about 6 hours in an 8 hour workday; and he can frequently engage in gross handling, fingering, and feeling. [AR 61-62].

In February 2012, another non-examining state agency physician, Dr. Crow, reviewed plaintiff's case file and agreed with the findings of Dr. Taylor-Holmes. [AR 318].

---

[1] "Occasionally" means "occurring from very little up to one-third of the time." Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5.

4

In April 2012, Dr. Bagner performed a consultative psychiatric evaluation on plaintiff at the Commissioner's request. [AR 319]. Dr. Bagner concluded that "[f]rom a psychiatric standpoint, [his] prognosis [was] fair. [AR 323]. Dr. Bagner opined that

> [plaintiff's] ability to follow simple oral and written instructions was mildly limited; his ability to follow detailed instructions was moderately limited due to learning problems; his ability to interact with the public, coworkers and supervisor was mildly limited; his ability to comply with job rules, such as safety and attendance, was mildly limited; his ability to respond to changes in a routine work setting was mildly limited; his ability to respond to work pressure in a usual working setting was moderately limited; and his daily activities are mildly limited. [AR 322-323].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Statement of Disputed Issues**

The disputed issues are whether the ALJ properly considered the opinion of the consultative examining neurologist, Dr. Handleman, and whether there is an inconsistency between the Dictionary of Occupational Titles ("DOT") and the ALJ's holding that plaintiff can perform the jobs of packer, sorter/grader, and assembler of small products. [JS 2].

**Discussion**

**Dr. Handleman's opinion**

Plaintiff contends that the ALJ erred by failing to provide specific and legitimate reasons for rejecting the opinion of the consultative neurologist, Dr. Handleman, that plaintiff can "use his hands for fine and gross manipulative movements occasionally." [AR 317].

The ALJ concluded that "[t]he medical evidence regarding [plaintiff's] neck and upper extremity complaints related to CTS [] do not support a finding of disability." [AR 17]. The ALJ found that although the evidence suggests that plaintiff cannot perform forceful grasping or torqueing, bilaterally, he nonetheless can perform fine and gross manipulation frequently.[2] [AR 17]. The ALJ gave "great weight" to the determinations of the non-examining medical consultants, Dr. Taylor-Holmes and Dr. Crow, who concluded that plaintiff has the ability to perform frequent gross handling and fingering. [AR 18, 61, 318].

The ALJ gave "some weight" to the opinion of the consultative examining neurologist, Dr. Handleman. [AR 18]. Dr. Handleman performed a comprehensive neurological evaluation in August 2011. [AR 313]. Dr. Handleman found plaintiff had "a decrease in pin prick at the fingers," "elbow discomfort," "bilateral Hoffman's indicative of contralateral upper motor neuron involvement," and "positive Tinel's with discomfort radiating to the fourth and fifth fingers of both hands associated with decrease in prick of the hands below the wrist, [implying] ulnar nerve entrapment at the elbow."[3] [AR 316]. He also reviewed plaintiff's medical records, including the nerve conduction study performed by Dr. Thakran.

Based on his examination and review of plaintiff's medical records, Dr. Handleman diagnosed plaintiff with "bilateral carpal tunnel syndrome." [AR 316]. Dr. Handleman opined that plaintiff has the following physical limitations: plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; he can push and pull on an occasional basis; and he can use his hands for fine and gross manipulative movements on an occasional basis. [AR 317]. In holding that plaintiff has the RFC to perform frequent fine and gross manipulation, the ALJ rejected Dr. Handleman's examining source opinion as "overly restrictive" and adopted the non-examining source opinions. [AR 15].

---

[2] "Frequently" means "occurring from one-third to two-thirds of the time." Social Security Ruling 83-10, 1983 WL 31251, at *6.

[3] "Tinel's sign" occurs when pain, tingling or a shock-like sensation are produced distal to the injury, along the nerve distribution, as a result of percussing a peripheral nerve over the area of injury, and is significant for peripheral nerve injury due to trauma, compression, and similar conditions. Tinel's test "is commonly used for carpal tunnel syndrome." Dan J. Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 3d § 11:2 (2002).

If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). The opinion of a non-examining physician normally is entitled to less deference than that of an examining and treating physician precisely because a non-examining source does not have the opportunity to conduct an independent examination and does not have a treatment relationship with the claimant. See Andrews v. Shalala, 53 F.3d 1035, 1040-1041 (9th Cir. 1995). A non-examining physician's conclusion, "with nothing more," does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician." Erickson v. Shalala, 9 F.3d 813, 818 n. 7 (9th Cir. 1993) (emphasis omitted) (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)).

To reject Dr. Handleman's opinion that plaintiff was limited to occasional fine and gross manipulation and to support his conclusion that plaintiff could frequently perform such tasks, the ALJ cited Dr. Handleman's "mild findings with regard to [plaintiff's] CTS impairment," along with the findings of the non-examining physicians, the limited nature of plaintiff's treatment for CTS, and the objective findings of Dr. Thakran. [AR 17-18]. The ALJ's reasons for rejecting Dr. Handleman's opinion in favor of the opinions of the non-examining physicians lack substantial support in the record as a whole.

The ALJ asserted that Dr. Handleman's findings related to plaintiff's upper extremity complaints were "mild," and therefore that Dr. Handleman's RFC was "overly restrictive." [AR 18]. Dr. Handleman was board-certified in the relevant specialty, neurology, and had the opportunity to conduct a physical and neurological examination of plaintiff and to review medical records, including an examination report and upper limb nerve conduction study from plaintiff's treating neurologist, Dr. Thakran. [See AR 313-316]. See 20 C.F.R. §§ 404.1527(c) (5), 416.927(c)(5) (factors used in assessing the weight of medical opinions include opportunity to examine the claimant, supportability of opinion, and specialization); Andrews, 53 F.3d at 1040-1041 (explaining that more weight is given to the opinions of treating and examining physicians because they have a greater opportunity to know and observe the patient as an individual); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) (explaining that the opinion of a specialist about medical issues related to his or her area of specialization are given more weight than the opinion of a nonspecialist) (citing 20 C.F.R. § 404.1527(c)). Dr. Handleman's positive examination findings included

7

pathological upper limb reflexes bilaterally ("Hoffman's sign"); positive Tinel's sign bilaterally, with discomfort radiating to the first, second, and third fingers; decrease in pin prick sensation at the fingers, third greater than second, greater than first finger of both hands; elbow discomfort; and positive Tinel's with discomfort radiating to the fourth and fifth fingers of both hands with decrease in pin prick sensation of the hands below the wrist, implying ulnar nerve entrapment at the elbow. [AR 316].  Along with his examination findings,  Dr. Handleman considered plaintiff's past medical history, which includes a diagnosis of CTS and bilateral carpal tunnel release surgery; plaintiff's report of symptoms; and the medical records available for his review.  [See AR 313-315].  The ALJ's assertion that Dr. Handleman's opinion is "overly restrictive" in light of his "mild findings' is nothing more than boilerplate language and fails to offer any substantive basis for his conclusion.  See  Garrison v. Colvin, 759 F.3d 995, 1012-1013 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns little weight while doing nothing more than ignoring it, asserting without explanation that another opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

The ALJ also erred in relying on the contrary non-examining source opinions from Dr. Taylor-Holmes and Dr. Crow.  Standing alone, a non-examining physician's opinion cannot serve as substantial evidence supporting the rejection of a contrary treating or examining source opinion.  See Pitzer, 908 F.2d at 506 n.4.  In an attempt to buttress his reliance on the non-examining physicians' opinions, the ALJ  relied on plaintiff's treatment history for CTS. [AR 17].  The ALJ reasoned that although plaintiff was "assessed with bilateral CTS and underwent CTS release surgery in 2003, treatment since then has been limited to oral medications and wrist braces." [AR 17]. The ALJ further noted that "this evidence suggests the claimant could perform fine and gross manipulation on a frequent basis, at the light exertional level, but would be precluded from forceful grasping or torqueing, bilaterally." [AR 17].

The ALJ articulated no medical basis for concluding that the nature of plaintiff's treatment for CTS undermined the reliability of Dr. Handleman's opinion.  This is especially true in view of plaintiff's history of unsuccessful bilateral carpal tunnel release surgery.  [See AR 282, 293 (noting that plaintiff reported a past medical history of a CTS diagnosis about six years ago and bilateral surgical release with "poor outcome"); AR 313 (plaintiff "is status post 2003, bilateral carpal tunnel release surgery that was unsuccessful"). The ALJ acknowledged that plaintiff had undergone bilateral carpal tunnel release surgery but failed to note that it was "unsuccessful" or had a "poor outcome," which suggests that plaintiff's

remaining treatment options were limited. Nor did the ALJ point to any evidence suggesting that more aggressive treatment modalities were available to plaintiff. [See AR 17]. Cf. Lapeirre–Gutt v. Astrue, 382 Fed.Appx. 662, 664 (9th Cir. 2010) (noting that the claimant had undergone cervical fusion surgery in 2004 in an attempt to relieve her pain symptoms and had not undergone any surgery since that time, and adding that "the record does not reflect that more aggressive treatment options are appropriate or available. A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist."); Ritchotte v. Astrue, 281 Fed.Appx. 757, 759 (9th Cir. 2008) (holding that the record "contradicts the ALJ's finding" that the claimant's treatment was "too conservative" and undermined his subjective complaint where the claimant "previously had surgery," and "[t]he prognosis for further surgery was guarded"); Carmickle v. Comm'r. Soc. Sec. Admin., 533 F.3d 1155, 1161-1162 (9th Cir. 2008) (holding that although a conservative course of treatment can undermine allegations of debilitating pain, conservative treatment is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment).

Furthermore, Dr. Handleman was aware of plaintiff's reported treatment history for CTS and did not find that it warranted a less restrictive RFC. [See AR 314, 317]. See Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (noting that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations").

Finally, the ALJ impermissibly relied on the objective findings of Dr. Thakran to support his conclusion that plaintiff can frequently perform fine and gross manipulation. The ALJ concluded that "evidence suggests the [plaintiff] could perform fine and gross manipulation on a frequent basis" because Dr. Thakran's "positive objective findings were limited to a glove-impairment in pinprick during a neurological exam in January of 2011 [while] [a]ll other findings were normal." [AR17]. The ALJ mischaracterized Dr. Thakran's findings by failing to mention that after finding "a glove-impairment in pinprick symmetrically" in January 2011, Dr. Thakran ordered a nerve conduction study of plaintiff's upper limbs. [AR 17; see AR 293-296]. That study, which was conducted in February 2011, was "abnormal," revealing "[b]ilateral median nerve dysfunction at the wrist (C.T.S.)" and "[u]nderlying distal polyneuropathy." [AR 17, 284, 296]. The ALJ either disregarded or was unaware of the abnormal nerve

conduction study. Dr. Handleman, on the other hand, reviewed it along with Dr. Thakran's January 2011 report as part of his consultative evaluation. Accordingly, Dr. Thakran's findings do not amount to substantial evidence for rejecting Dr. Handleman's opinion. [See AR 314]. See Garrison, 759 F.3d at 1017 n.23 (noting that the ALJ is not permitted to "cherry-pick" from "mixed results" in treatment notes to support a denial of benefits); Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) (noting that the physician's "statements must be read in context of the overall diagnostic picture he [or she] draws.").

For the reasons described above, the ALJ erred in rejecting Dr. Handleman's conclusion that plaintiff is limited to occasional fine and gross manipulation, and substantial evidence does not support the ALJ's finding that plaintiff can frequently perform fine and gross manipulation. The ALJ's error in rejecting Dr. Handleman's opinion was not harmless. In social security disability cases, the court is to "apply the same kind of 'harmless-error' rule that courts ordinarily apply in civil cases." Mcleod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011). "[W]here the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate . . . [but] where harmlessness is clear and not a 'borderline question,' remand for reconsideration is not appropriate." Mcleod, 640 F.3d at 888.

Based on his RFC finding and the vocational expert's hearing testimony, the ALJ found that plaintiff is capable of performing work as a packer (DOT 920.687-166 – "shoe packer"), sorter/grader (DOT 529.687-186 – "sorter, agricultural produce"), and assembler of small products (DOT 706.684-022 – "assembler, small products I"). [AR 20-21]. All three of the jobs identified by the ALJ are inconsistent with Dr. Handleman's conclusion that plaintiff can only use his hands for fine and gross manipulation occasionally (that is, from very little to up to one-third of the time). See note 1, supra. The DOT job of "shoe packer" requires reaching and handling "constantly," meaning "2/3 or more of the time." DOT 920.687-166. The DOT job of "sorter, agricultural produce" requires reaching "occasionally," meaning "up to 1/3 of the time," but that job also requires handling "constantly." DOT 529.687-186. The DOT job of "assembler, small products I" requires reaching, handling, and fingering "frequently," which means "from 1/3 to 2/3 of the time." DOT 706.684-022. Therefore, plaintiff was prejudiced by the ALJ's error, which was not harmless.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th

Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F. 3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

In this case, a remand for further proceedings is the appropriate remedy. The ALJ did not articulate legally sufficient reasons for rejecting Dr. Handleman's opinion as to plaintiff's limitation in fine and gross manipulation. See Lester, 81 F.3d at 834 (stating the general rule that the improperly discredited opinion of a treating or examining physician is credited as true as a matter of law); see also Harman, 211 F.3d at 1179 (explaining that even if there are grounds on which the ALJ could legitimately have relied to reject an examining physician's opinion, the "crediting as true" rule is warranted in order to improve the performance of ALJs by requiring them to articulate those grounds in the original decision and to discourage them from reaching a conclusion first, and then attempting to justify it by ignoring evidence). However, outstanding issues remain to be decided before a determination of disability can be made, namely whether plaintiff can perform alternative work with the limitation to "occasional" fine and gross manipulation described by Dr. Handleman in his improperly discredited 2011 evaluation.

Therefore, Dr. Handleman's August 2011 functional assessment is credited as true as a matter of law, and this case is remanded for further administrative proceedings at step five of the sequential evaluation procedure. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003) (applying the Smolen test

to hold that while the ALJ did not properly reject the opinions of the treating physicians or the claimant's subjective complaints and lay witness testimony, several "outstanding issues" remain to be resolved, including whether, according to a vocational expert, there was alternative work the claimant could perform).

**Conclusion**

The Commissioner's decision is not supported by substantial evidence and is not free of legal error. Accordingly, the Commissioner's decision is **reversed** and the case is remanded for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED: April 28, 2015

_____
ANDREW J. WISTRICH
United States Magistrate Judge